**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 21-77** |
| **TAYANNA BOWMAN** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Tayanna Bowman stands before this Court for sentencing for her conviction for distributing images of children being sexually abused and exploited. For the reasons set forth below, the government requests that this Court sentence her to a term of incarceration near the bottom of her sentencing Guideline range of 135 to 168 months' imprisonment to be followed by a lengthy period of at least 20 years of supervised release.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory Guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory Guideline range and of the Section 3553(a) factors, which support the imposition of a low-guideline sentence to be followed by a lengthy period of supervised release.

## I.      PROCEDURAL BACKGROUND

On June 11, 2020, the defendant was arrested on a federal complaint and warrant charging her with one count of distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The defendant waived prosecution by indictment and entered a guilty plea agreement with the government, in which she agreed to plead guilty to a one-count Information charging her with distribution and attempted distribution of child pornography. The Information was filed on March 9, 2021, and the defendant entered a guilty plea to the offense on March 22, 2021. A sentencing hearing is scheduled for January 27, 2022.

## II.     FACTUAL BACKGROUND

In January of 2020, the defendant was employed as a behavioral health technician with ChanceLight Autism Services in Havertown. In this role, she provided one-on-one services to autistic children, typically in their homes. She previously worked as a teaching assistant at her grandparents' in-home daycare business in Philadelphia and regularly spent time there. In

January of 2020, the defendant also operated the Kik Messenger account "elena_mone" and communicated with other child sex offenders in a Kik Messenger group called "Teeny Tiny Tots" regarding their shared interest in the sexual exploitation of children. During these communications, the defendant and other members of the group discussed their sexual interest in children and distributed images of child pornography amongst the group. When the conversation shifted to a different topic, the defendant redirected the conversation by encouraging the group, "Anywho let's get back to the very hot vids shall we." On January 27, 2020, the defendant distributed five images within the group, including the following:

- An image depicting a prepubescent male, approximately 3 to 6 years old, lying on his back with his erect penis and genitals exposed while an adult woman performed oral sex on him;

- A video, approximately 11 seconds in length, depicting a nude, adult woman attempting to insert a prepubescent male (approximately 3 to 6 years old) child's erect penis into her vagina;

- A video, approximately 53 seconds in length, depicting an adult male inserting his erect penis into a prepubescent (approximately 6 to 8 years old) girl's vagina;

- A video, approximately 52 seconds in length, depicting an adult male inserting his penis in the vagina of a sleeping, prepubescent girl (approximately 6 to 8 years old), and then ejaculating on to her;

- A video, approximately 7 seconds in length, depicting an adult woman attempting to insert a prepubescent (approximately 2 to 4 years old) boy's penis into her vagina. [1]

Afterwards, the defendant reiterated, "I love lil boys," to the Kik group. These images and conversation were captured by an undercover FBI agent monitoring the group on that day.

The defendant was linked to the "elena_mone" Kik account through the IP addresses

---

[1] At the time of sentencing, the government will make these images and a sampling of the 3,900 images of child pornography recovered from the defendant's Mega NZ cloud storage account available to the Court to view, should the Court wish to do so prior to imposing a sentence.

used by the account, which resolved to the defendant's own residence on the 200 block of North Simpson Street in Philadelphia and at the defendant's grandparents' daycare business, Cynthia's Little Treasures, located on the 300 block of North 63rd Street in Philadelphia.  She also later admitted to operating the account.

On June 11, 2020, after the FBI executed a federal search warrant at the defendant's residence, the defendant voluntarily agreed to speak to agents and provided an audio-recorded interview.  In summary, the defendant admitted to operating the "elena_mone" Kik account, engaging in the above-described communications in the "Teeny Tiny Tot" group, and distributing images of child pornography. **She estimated that she had distributed child pornography within Kik Messenger on approximately 50 prior occasions.**  She claimed that she sent the images "to fit in" with other users in the groups and because she liked the attention she received from the male users in the groups.  The defendant told agents that she received sexual gratification from the responses of male Kik users when she sent them child pornography. The defendant also reported that she deleted the Kik application from her phone (but did not delete her actual account) some time in February or March of 2020, but recently had reinstalled the application in May 2020.

The defendant also provided verbal and written consent to search her cell phone and laptop computer and turned both of those items over to FBI agents.  The subsequent forensic examination of the defendant's seized cell phone and laptop did not recover any additional images of child pornography.  The Kik application was installed on the defendant's cell phone with the username "elena_mone," but the content only went back to May 2020.  The available communications demonstrated that she was engaged with other child pornographers and had received images of child pornography in private messages as recently as just a few weeks before

the execution of the search warrant.

The defendant's laptop contained several URLs with file names indicative of an interest in incest that linked to the cloud storage platform Mega NZ— a foreign cloud storage platform based in New Zealand and known to law enforcement as a place where child pornographers often store and share files— but the links themselves were no longer active.  A subsequent search warrant to Mega NZ recovered an additional 3,900 images and videos from the defendant's account, all depicting child pornography.

## III.   SENTENCING CALCULATION

### A.   Statutory Maximum Sentence

1. **Distribution/Attempted Distribution of Child Pornography, 18 U.S.C. § 2252(a)(2), (b)(1) (Count One):**  20 years' imprisonment with a 5-year mandatory minimum term, a minimum 5 years up to a lifetime of supervised release, a $250,000 fine, mandatory restitution pursuant to 18 U.S.C. § 2259, a $100 special assessment, and if found to be non-indigent, an additional mandatory $5,000 special assessment must be imposed pursuant to 18 U.S.C. § 3014, and up to $35,000 in additional assessments under 18 U.S.C. § 2259A.

### B.   Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the final offense level as 33.  As the parties also stipulated in the guilty plea agreement, the base offense level is 22, pursuant to USSG § 2G2.2(a)(2).  2 levels are added by application of USSG § 2G2.2(b)(2) because the material distributed and possessed by the defendant depicted prepubescent minors under the age of 12 years old.  2 levels are added by application of USSG § 2G2.2(b)(3)(F) because the defendant knowingly engaged in distribution.  4 levels are added by application of USSG § 2G2.2(b)(4) because the material portrays sadistic conduct or other depictions of violence.  2 levels are added by application of USSG § 2G2.2(b)(6) because the offense involved the use of a computer.  4 levels are added by application of USSG § 2G2.2(b)(7)(C) because the

offense involved more than 300 but less than 600 images. The defendant receives a 3-level deduction for her timely acceptance of responsibility, pursuant to USSG § 3E1.1. This results in a final offense level of 33. PSR ¶¶ 28-41.

The defendant's criminal history category is I, making her final advisory Guideline range 135 to 168 months' imprisonment. PSR ¶ 84.

## IV.   SENTENCING ANALYSIS

A thorough consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one near the bottom of the sentencing Guideline range of 135 to 168 months' imprisonment to be followed by a lengthy period of at least 20 years of supervised release.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

A.  **Consideration of the 3553(a) Factors**

1.  The nature and circumstances of the offense

Child sexual exploitation crimes are undisputedly grave offenses.  As the Supreme Court

has explained, "[c]hild pornography harms and debases the most defenseless of our citizens.

Both the State and Federal Government have sought to suppress it for many years, only to find it

proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285,

307 (2008).  Congress, too, has explained the difficulties in successfully combating the

"immense" problem of child pornography and the "rapidly-growing market" for such materials,

which is fueled by new technologies that were largely unavailable when the Sentencing

Guidelines were first promulgated.  *See S. Rep. No. 108-2 (2003).*

Indeed, Congress has repeatedly expressed its dismay about the "excessive leniency" of

federal sentences, *see H. Rep. No. 108-66; S. Rep. No. 104-358*, especially in light of the

continuing harm caused to the children appearing in such materials, as well as the inflammatory

effect it has on the "desires of child molesters, pedophiles, and child pornographers" which

results in a robust and growing market for child pornography and therefore increased abuse of

innocent children.  *See Child Pornography Prevention Act of 1996,* Pub. L. No. 104-208, § 121,

110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note; *United States v. Norris*,

159 F.3d 926, 929 (5th Cir. 1998) ("[T]he victimization of the children involved does not end

when the pornographer's camera is put away.").  In *United States v. MacEwan*, 445 F.3d 237 (3d

Cir. 2006), the Third Circuit upheld the defendant's admittedly "harsh" sentence for distributing

and possessing child pornography based, in large part, on the extreme harm to the children who

are victims of sexual abuse:

> "In evaluating the magnitude of the harm caused by child pornography, we
> defer to the findings made by Congress.  The congressional findings

> underlying § 2251 repeatedly stress that child pornography 'is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.'  Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. 3009, 3009–26 (1996) (codified as amended at 18 U.S.C. § 2251).  Congress found that 'where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.' *Id.*  Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.' § 121, 110 Stat. at 3009–27. Furthermore, 'it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.  *Id.; see also New York v. Ferber*, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.")."

*United States v. MacEwan*, 445 F.3d at 249-50.

There is no question that the defendant engaged in an extremely serious offense.  She was well immersed in an online community of child pornographers and sexual predators, actively trading and distributing images of horrific sexual abuse of children, even babies and toddlers. The defendant and others like her who share in the world of child pornography perpetuate the harm to the victims depicted in these images by creating demand and fueling this market, thereby leading to further production of images.  The children are victimized every time their images are downloaded, purchased, or viewed by another person.  Given the scope of the Internet, their exploitation is ongoing and relentless, as evidenced by the victim impact letter of just one of the children who suffered not only sexual abuse but long-term, ongoing trauma, all for the sexually deviant "pleasure" of people like this defendant.  (*See* Tara's Victim Impact Statement, Attached as Exhibit A).  As "Tara," a victim whose adult abuser began exploiting her and creating child pornography of her when she was just 5 years old, writes:

> Every time someone views this trash, he [or she, in this case] is once
> again making me re-live the most horrific part of my childhood.  I
> can never truly heal because the perpetrators and stalkers never
> allow me to do so.  Anyone viewing these videos/pictures is just as
> guilty for causing me or any other exploited child undue harm,
> unneeded stress and insecurity in a time when we need to feel safe
> and have a chance to heal/recover.  *See* Exhibit A.

The Supreme Court has clearly recognized the harm to these children, noting that the "materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759 (1982); *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come.")  The letter cited above, which is appended to this sentencing memorandum, describes the same life-long pain that just one of the defendant's victims endures because of the continued distribution of her pornographic images throughout the world.  The defendant's part in the continued victimization of this child and others is consequential.

The type of materials in which this defendant trafficked also favors a sentence within her Guideline range.  Her collection is comprised of some of the most depraved images and videos available on the Internet, and includes videos of toddlers being humiliated and raped by adults. The government will prepare a brief presentation of some of the images and videos in the defendant's collection to present at sentencing, or will otherwise make these images available to the Court to view, in order to give the Court a true understanding of the scope of the defendant's crimes.  It is sometimes difficult to describe in words videos that show toddlers being orally raped by adult women or adult women forcing little boys to engage in vaginal sex with them.  To most of the world these images are haunting, but to this defendant they were sexually arousing and useful to her in her deviant attempts to seek out attention and validation from strangers on

the Internet.  The trauma suffered by the children in the images collected and traded by the

defendant demonstrates the seriousness of her offenses, and should factor into her final sentence.

2.   The history and characteristics of the defendant

The history and characteristics of this defendant also favor a guideline sentence.  The

defendant is now 25 years old.  She is well educated, having earned a Bachelor of Arts degree in

psychology, PSR ¶¶ 72-74, and had ambitions to become a clinical psychologist.  PSR ¶ 61.[2]

After graduating college, the defendant's choice of employment is particularly alarming,

given her expressed sexual interest in little boys and her entrenchment in an online community of

child sex offenders.  The defendant was employed at ChanceLight Autism Services as a

behavioral health technician from November 2019 through the time of her arrest on June 11,

2020, working with some of the most vulnerable members of society— autistic children.  The

defendant reports that she worked primarily with 5 and 6-year-old boys, PSR ¶ 76, the same

population in which she expressed her sexual interest to her Kik Messenger associates ("I love lil

boys") after distributing two videos and a still-image of adult women sexually abusing boys

between the ages of 2 and 6 years old.  The defendant's primary client at the time she committed

the distribution offense was a 5-year-old autistic boy (whose identity is known to the

government) with very limited verbal ability.  In her role as a behavioral health technician, the

defendant was trusted by these children's parents and her employer to look after the children's

best interests and to provide behavioral health support.  While she was tasked with these

---

[2] In the PSR, the defendant reports that she currently is studying to take the GREs and hopes to enroll in a five-year combined masters and doctoral program in psychology upon her release from prison.  The defendant's conviction for distributing child pornography, a serious felony crime that will require her to register as a sex offender under SORNA, likely will prevent her from ever working as a licensed psychologist, as it should.  The government requests that the Court specifically order as a condition of supervised release that the defendant be prohibited from working and/or volunteering with children in any capacity.

responsibilities at work, on her own time, she was entrenched in a community of individuals, like herself, who received sexual gratification from viewing and discussing the sexual abuse of children.

Prior to working at ChanceLight, in the summer of 2019, the defendant worked as a counselor at a summer camp run by a residential treatment center in New Hampshire that specializes in treating boys ages 9 to 18 with psychiatric profiles and conduct disorders.  PSR ¶ 77.  The defendant also previously worked at her grandparents' in-home daycare business in Philadelphia, and used the Internet there to access her Kik account, share child pornography, and discuss the sexual abuse and exploitation of children with her Kik associates.  The IP logins from the defendant's grandparents' daycare business included some logins to her Kik account during traditional weekday business hours, presumably at times when there were children under the age of 6 attending daycare there.

Of all the professions in the world, the defendant chose one that gave her constant access to children.  The children she worked with every day at ChanceLight and her grandparents' daycare were in the same age range as the children depicted in the sexually explicit images she chose to distribute.  Furthermore, the defendant chose a profession where she had access to children who may not be verbal or communicative regarding whether they were being abused. The Court should consider these facts as aggravating circumstances because the defendant *chose* to surround herself with vulnerable children in her professional life while simultaneously being entrenched in an online community of pedophiles.

To this day, the defendant fails to admit her own sexual attraction to children, despite the overwhelming evidence to the contrary--- namely, her continued involvement in this online community and her own words, "I love lil boys."  When questioned by FBI agents and the pre-

sentence investigator, the defendant attributed her online child exploitation activities to loneliness and mental illness.  As described in the PSR, she reported that she was "looking for something… Some kind of support, love… whatever you want to call it."  PSR ¶ 26.  Similarly, the defendant told FBI agents that she engaged with her community of child pornographers to gain the sexual attraction and attention of men, admitting that she was sexually gratified by their responses when she shared child pornography videos with them.  At best, this nonsensical explanation— that the defendant was so interested in and in need of *male* attention from strangers on the Internet that, for months, she collected and distributed videos of *children* being raped— is disturbing.

The defendant's explanation for her conduct should also be of great concern to this Court because it demonstrates that the defendant may have been just a few steps away from engaging in hands-on sexual offenses and producing sexually explicit images of children to whom she had access at the request of other Kik users as a way to gain and maintain their attention.  In fact, the defendant reported to agents that after other Kik users learned details about her family and her work, they often asked sexually charged questions about her younger, minor siblings and the children with whom she worked at ChanceLight, but that she would try to redirect the conversation.

At its worst, the defendant's explanation is a self-serving excuse for her crimes, belied by her own statements to her Kik associates when the defendant believed she was talking to like-minded individuals, protected from detection by law enforcement.  If the defendant's claims were true, she could receive validation, attention, and sexual satisfaction from any number of chat groups on the Internet.  Instead, the undercover agent captured the defendant, in her own words, redirecting the conversation in the Teeny Tiny Tots group back *towards* a discussion of

child exploitation: "Let's get back to the very hot vids shall we." After distributing the images described above, the defendant reiterated to the group, "I love lil boys." At its worst, the defendant's explanation is a minimization of her involvement in the offense in the face of the overwhelming evidence to the contrary--- an outright lie to disguise her own sexual attraction to children.

The pre-sentence report identifies the defendant's mental health and emotional issues as a reason that a below-guideline sentence may be sufficient to comply with the purposes of sentencing, and the government expects that the defendant may seek a downward variance on this ground. PSR ¶ 102. The defendant has a documented mental health history of anxiety and depression, and she has received mental health counseling and treatment since she was in high school. PSR ¶ 69. While the government is sympathetic to the defendant's struggles with her mental and emotional health, it is aggravating that she was receiving mental health therapy at Elwyn at the time she committed these offenses, PSR ¶ 70, but did not address her child exploitation interests or her ongoing crimes against children with her therapist. This is especially alarming considering that she was employed in a field that catered to autistic children, and had unfettered access to very young preschool children through her grandparents' day care. The defendant was not deterred from engaging with her community of online sex offenders and committing child exploitation crimes, despite the fact that she had a relationship with a trusted mental health professional at the time. With her psychology degree, the defendant knew better than most that she could have sought help for her deviant sexual interests and, instead, chose to conceal her activities from her therapist. The defendant's mental health history contributes to her risk to re-offend and engage in similar criminal behavior when released into the community.

Though this is the defendant's first criminal conviction, she was well entrenched in the

online world of child pornography, and her sexual exploitation of children was not limited to the day she distributed the images to the undercover agent.  She admitted to distributing child pornography using Kik on approximately 50 prior occasions, and she had amassed a collection of 3,900 images and videos in her overseas cloud storage account, MegaNZ, which she used exclusively to store child pornography.[3]  The Guidelines already reflect the fact that the defendant has no prior criminal record.  She should not now receive any additional consideration for this reason.  *See United States v. Borho,* 485 F.3d 904 (6th Cir. 2007) (There were no "extraordinary circumstances" that justified a decreased sentence based on, among other considerations, the defendant's lack of a criminal history, lack of evidence that he had ever molested a child, and a sex offender risk assessment that opined that the defendant was at low risk for re-offending); *United States v. Peterson*, 83 Fed.App'x. 150 (8th Cir. 2003) (appeals court reversed District Court's downward departure based on the low likelihood for re-offense and susceptibility to abuse in prison, as the first factor was already accounted for in the Guidelines and the second factor was inapplicable to the facts of the case); *United States v. Goldberg*, 295 F.3d 1133 (10th Cir. 2002) (defendant's lack of prior record, and low risk of recidivism are not valid grounds for downward departure because those factors are all taken into account in the Guidelines themselves).  The defendant's lack of a prior record should not provide any basis to vary from the Guideline range, based on the facts of this case.  The vast majority of

---

[3] Because the defendant demonstrated her willingness to plead guilty to an Information early in the process, she was not charged with an additional count related to her possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  As a result, these 3,900 images of child sexual abuse material were not factored into her Guideline calculation.  Had these additional images been included, her Guideline range would have increased by 1 additional level by application of the sentencing enhancement in USSG § 2G2.2(b)(7)(D) for possession of more than 600 images, resulting in a Guideline range of 151-188 months' imprisonment.  Had the defendant been charged with an additional count of possession of child pornography, her maximum exposure, restitution and assessments, and possible sentences for violations of supervised release would also be increased.

federal child pornography offenders have no prior records at the time that they are sentenced. *U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 320 (2011)* available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/M andatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm. This puts the defendant squarely in the heartland of most sex offenders in federal court. The Guideline range in this case accounts for the circumstances of the crime the defendant committed as a first-time offender, and the fact that she does not have a prior record should not be used as additional credit to vary downward.

3. <u>The seriousness of the offense, respect for the law, and just punishment</u>

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). The defendant's distribution of child pornography in the presence of an undercover agent in January 2020 was not an isolated occurrence, but part of the defendant's ongoing, sexually exploitative behavior toward children at a time when she was employed working with autistic children. These are serious offenses, with lasting impact upon the victims, as is evidenced by the victim impact statement attached to this memorandum.

As for the last factor, the government submits that the recommended sentence will adequately punish this defendant. She clearly intended to involve herself with child exploitation materials, and went to great lengths to find others who had the same deviant interests. She has earned a significant prison sentence.

4. <u>Deterrence and consistency in sentencing</u>

Section 3553(a)(2) also mandates that the Court consider a sentence that adequately

deters others who would commit similar offenses.  The recommended Guidelines range is a significant sentence that will afford adequate deterrence to others.  *See United States v. Ketcham*, 80 F.3d 789 (3d Cir. 1996), where the Third Circuit noted that Congress' criminalization of the "mere" possession of child pornography discourages its production by depriving would-be producers of a market.  *Id*. at 793.  In this way, a significant sentence serves as a deterrent even to those who may be even more culpable, like the defendant in this case, who went beyond "mere" possession of child pornography by distributing images for the deviant sexual pleasure of herself and others.  The sentence in this case must give notice that the sexual exploitation of children has serious and significant consequences.

     5.    <u>Other considerations</u>

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

I cannot excuse anything in the defendant's background as having any weight with me in terms of what sentence I should impose in this case." *Id.*, at 237. This Court also added that defendant Yard was "not atypical" of child pornography defendants in that he had no prior record, a good education and a family ignorant of his crimes. *Id.*, at 237-38. *See also*

Similarly, here, t

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

6.     <u>Restitution and Assessments</u>

Restitution is mandatory pursuant to 18 U.S.C. § 2259; however, to date, the government

has not received any restitution requests from victims depicted in the defendant's collection.  The

defendant is subject to the Justice for Victims of Trafficking Act (JVTA), but the government

agrees that she is indigent for purposes of this assessment and will not seek the $5,000

mandatory special assessment.  The defendant is also subject to the provisions of the Amy,

Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), which provides

that the court shall assess not more than $35,000 on the defendant, who was convicted of

distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2).  The government requests

that the Court assess $3,000 under the AVAA, particularly in light of the fact that the defendant will not be ordered to pay restitution to any of her victims.

## V.    <u>CONCLUSION</u>

For all of the reasons outlined above, considerations of sentencing favor the imposition of a sentence near the bottom of the Guideline range of 135 to 168 months' incarceration to be followed by a lengthy period of at least 20 years of supervised release.  The government also requests that this Court impose the special conditions for supervision of sex offenders, as recommended by the United States Probation Office.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


*/s/ Kelly Harrell*
KELLY HARRELL
Assistant United States Attorney

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date I caused a true and correct copy of the foregoing

Government's Sentencing Memorandum to be served by email and/or ECF filing upon counsel

for defendant:

Jeffrey Azzarano, Esq.
jazzarano@yahoo.com

*/s/ Kelly Harrell*
KELLY HARRELL
Assistant United States Attorney

Date: January 21, 2022